**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| UNILOC USA, INC. and UNILOC LUXEMBOURG S.A., | § § § § | CIVIL ACTION NO. 2:16-cv-570 **JURY TRIAL DEMANDED** |
| Plaintiffs, | § § | |
| v. | § § | |
| AMAZON.COM, INC. and AMAZON DIGITAL SERVICES, INC., | § § § | |
| Defendants. | § § | |

**ORIGINAL COMPLAINT**
**FOR PATENT INFRINGEMENT**

Plaintiffs, Uniloc USA, Inc. and Uniloc Luxembourg, S.A. (together "Uniloc"), as and for their complaint against defendants, Amazon.com, Inc. and Amazon Digital Services, Inc. ("Defendants"), allege as follows:

<u>**THE PARTIES**</u>

1.      Uniloc USA, Inc. ("Uniloc USA") is a Texas corporation having a principal place of business at Legacy Town Center I, Suite 380, 7160 Dallas Parkway, Plano Texas 75024. Uniloc also maintains a place of business at 102 N. College, Suite 603, Tyler, Texas 75702.

2.      Uniloc Luxembourg S.A. ("Uniloc Luxembourg") is a Luxembourg public limited liability company having a principal place of business at 15, Rue Edward Steichen, 4th Floor, L-2540, Luxembourg (R.C.S. Luxembourg B159161).

3.      Uniloc has researched, developed, manufactured, and licensed information security technology solutions, platforms and frameworks, including solutions for securing software applications and digital content. Uniloc owns and has been awarded a number of patents. Uniloc's

technologies enable, for example, software and content publishers to securely distribute and sell their high value technology assets with minimum burden to their legitimate end users. Uniloc's technology are used in several markets, including, for example, software and game security, identity management, intellectual property rights management, and critical infrastructure security.

4.     On information and belief, Amazon Digital Services, Inc. is a Delaware corporation with its principal place of business at 410 Terry Avenue North, Seattle, WA 98109.  Amazon Digital Services, Inc. can be served through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

5.     On information and belief, Amazon.com, Inc. is a Delaware corporation with its principal office at 410 Terry Avenue North, Seattle, WA 98109. Amazon.com, Inc. can be served through its registered agent, Corporation Service Company, 2711 Centerville Rd., Wilmington, DE 19808. Amazon.com is the parent company of Amazon Digital Services LLC and also the primary operator and controller of the www.Amazon.com commerce website.

6.     On information and belief, Amazon has offices in Texas where it sells, develops, and/or markets its products including: (a) Amazon's Austin, Texas office houses approximately 250 employees and occupies nearly 100,000 square feet of office space;[1] (b) Amazon has more than 3,500 employees and 7 fulfilment centers in Texas including a location in Irving, Texas;[2] (c) Amazon maintains a data center in Dallas, Texas which is involved in the operation of the accused

---

[1] Haener Elie Jr., Amazon Establishes Austin HQ in Domain 7, MAY 22, 2015, http://www.costar.com/News/Article/Amazon-Establishes-Austin-HQ-in-Domain-7/171852.

[2] Amazon Fulfillment Centers, AMAZON WEBSITE (2015), http://www.amazonfulfillmentcareers.com/amazonfulfillment/locations/.

instrumentalities.[3]

7.      According to Amazon's website, Amazon offers infringing products for sale throughout the United States and Canada, including in the Eastern District of Texas. Further, Amazon advertises its infringing products throughout the Eastern District of Texas and claims financial benefits through its conducting of business in Texas, including: (a) accepting monies from the State of Texas relating to Amazon's engagements with Texas entities;[4] (b) ongoing contracts with the State of Texas, including for the provision of infringing products and/or services to Texas governmental entities;[5] (c) Amazon's agreement to be subject to the laws and jurisdiction of Texas;[6] and (d) Amazon's assent to Texas insurance liability.[7]

## JURISDICTION AND VENUE

8.      Uniloc brings this action for patent infringement under the patent laws of the United States, 35 U.S.C. § 271 *et seq.* This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c) and 1400(b). Upon information and belief, Defendants are deemed to reside in this judicial district, has committed acts of infringement in this judicial district, and/or has purposely transacted business

---

[3] Rich Miller, Where Amazon's Data Centers are Located, DATA CENTER KNOWLEDGE WEBSITE (November 8, 2008), http://www.datacenterknowledge.com/archives/2008/11/18/where-amazonsdata-centers-are-located/.

[4] Brian Heaton, Texas and Amazon Unite on Cloud Services Contract, February 9, 2015, http://www.govtech.com/computing/Texas-and-Amazon-Unite-on-Cloud-Services-Contract.html; http://publishingext.dir.texas.gov/portal/internal/contracts-andservices/Contracts/Contract%20DIR_TSO_2733.pdf.

[5] Cloud Services for the State of Texas Department of Information Resources, AWS, Inc., DIR CONTRACT # DIR-TSO-2733, https://aws.amazon.com/contract-center/cloud-services-for-the-stateof-texas/; State of Texas Department of Information Resources Contract for Services with Amazon Web Services, Inc., DIR CONTRACT # DIR-TSO-2733, http://publishingext.dir.texas. gov/portal/internal/contracts-and-services/Contracts/Contract%20DIR_TSO_2733.pdf.

[6] *Id.* at 15 ("actions or proceedings arising from the Contract shall be heard in a state court of competent jurisdiction in Travis County, Texas").

[7] *Id.* at 14-15.

involving the accused products in this judicial district, including sales to one or more customers in Texas.

10.    Defendants are subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to its substantial business in this State and judicial district, including: (A) at least part of its past infringing activities, (B) regularly doing or soliciting business in Texas and/or (C) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas.

**PATENT-IN-SUIT**

11.    U.S. Patent No. 8,566,960 (the '960 Patent"), entitled SYSTEM AND METHOD FOR ADJUSTABLE LICENSING OF DIGITAL PRODUCTS was filed on November 17, 2008 and claims priority to Provisional Application No. 60/988,778, filed on November 17, 2007.  The '960 Patent issued on October 22, 2013. A true and correct copy of the '960 Patent is attached as Exhibit A hereto.

12.    The '960 Patent spent nearly five years being examined at the United States Patent and Trademark Office. During examination of the '960 Patent, trained United States Patent Examiners considered more than two-hundred twenty (220) references before determining that the inventions claimed in the '960 Patent deserved patent protection. Such references include, for example, various references from IBM, Microsoft, Amazon, Northrop Grumman Corporation, Audible, Inc., Digital Equipment Corporation, Intel, AT&T, Fujitsu, Avaya, California Institute Of Technology, Disney, Adobe, Canon, Texas Instruments, Napster, NBC, Sony, Samsung, EBay, and Alcatel.

13.    The '960 Patent issued after *Bilski v. Kappos*, 561 U.S. 593 (2010), and *Mayo*

*Collaborative Servs'. v. Prometheus Labs., Inc*., 132 S. Ct. 1289 (2012). And although the examinations predated *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), that case applied the *Mayo* framework and stated that its holding "follows from our prior cases, and *Bilski* in particular …."

14.     The '960 Patent claims technical solutions to problems unique to computer networks, such as controlling access to digital products in a manner that allows authorized customers the freedom to access the digital products even if using various electronic devices over time, while mitigating the risk that software licenses are illegitimately "shared amongst end users or even in worst case shared anonymously over the Internet resulting in massive piracy and copyright abuse of the product." (*See*, *e.g.*, '960 Patent, col. 1, lines 30-60).

15.     Although the systems and methods taught in the '960 Patent have been adopted by leading businesses today, at the time of invention, the technologies taught in the '960 Patent claims were innovative and novel, as evidenced, for example, by the breadth and volume of the references considered during prosecution.

16.     Further, the '960 Patent claims improve upon the functioning of a computer system by granting considerable freedom to access digital products under certain usage expectations, thereby minimizing the impact of digital rights management upon authorized users.

17.     Certain claims of the '960 Patent require a specific configuration of modules. For example, certain claims of the '960 Patent require "a communication module for receiving a request for authorization to use the digital product from a given device; a processor module in operative communication with the communication module; [and] "a memory module in operative communication with the processor module and comprising executable code . . . ." That executable

code itself requires a particular configuration set forth in those claims. At least this example claim language confirms the '960 Patent recites meaningful limitations that are explicitly tied to machines.

18. The '960 Patent claims are not directed to a "method of organizing human activity," "fundamental economic practice long prevalent in our system of commerce," or "a building block of the modern economy." Further, the systems and methods claimed in the '960 Patent were not a longstanding or fundamental economic practice at the time of patented inventions. Nor do they involve a method of doing business that happens to be implemented on a computer. Nor were they fundamental principles in ubiquitous use on the Internet or computers in general.

19. Instead, as explained above, the '960 Patent claims are directed toward a solution rooted in computer technology and use technology unique to computers and computer networking to overcome a problem specifically arising in the realm of digital products in the Internet age where piracy and unauthorized use is rampant.

20. Because the claims of the '960 Patent are directed to improving the functioning of such computers and computer networks, they cannot be considered abstract ideas. *Enfish, LLC v. Microsoft Corp.*, 2015-1244, 2016 WL 2756255, at *8 (Fed. Cir. May 12, 2016).

21. Indeed, the Federal Circuit in *Enfish* reaffirmed that software is a "large field of technological progress" which patents can protect:

> Much of the advancement made in computer technology consists of improvements to software that, by their very nature, may not be defined by particular physical features but rather by logical structures and processes. We do not see in *Bilski* or *Alice,* or our cases, an exclusion to patenting this large field of technological progress.

*Id.*

22.     The '960 Patent does not claim, or attempt to preempt, the performance of an abstract business practice on the Internet or using a conventional computer.

23.     The claimed subject matter of the '960 Patent is not a pre-existing but undiscovered algorithm.

24.     Publications of the application leading to the '960 patent have been referenced by more than seventy (70) other applications including patent applications by Microsoft; Symantec; Nokia; and Avaya.

## INVENTOR

25.     Ric B. Richardson ("Mr. Richardson") is the inventor of the '960 Patent.

26.     Mr. Richardson is no stranger to innovation. Mr. Richardson is a well-known Australian inventor who has been inventing since the 1970s. Mr. Richardson currently has more than 130 inventions. Such inventions have been licensed by more than a hundred companies, including, but not limited to Microsoft, IBM, Sony, Electronic Arts, Activision, and Adobe.

27.     Mr. Richardson has been featured on national Australian shows such as the "The Big Deal" and "A Done Deal" as a result of such inventions.

28.     Mr. Richardson has sought patent protection on some of his inventions and is listed as an inventor on at least a dozen granted patents.

29.     Uniloc was founded on one of Mr. Richardson's first United States patents, U.S. Patent No. 5,490,216 (the "'216 Patent"). Mr. Richardson's '216 Patent was involved in prior litigation where a Rhode Island jury awarded Uniloc entities $388 million for infringement by Microsoft Corporation. At the time, this patent verdict was one of the largest in history.

30.     Mr. Richardson moved to the United States from Australia and spent nearly a dozen

years commercializing his inventions. Mr. Richardson has since returned to Australia and spends his free time mentoring young entrepreneurs on a pro-bono basis. Mr. Richardson continues to develop new inventions to this day.

## COUNT I

### (INFRINGEMENT OF U.S. PATENT NO. 8,566,960)

31.     Uniloc incorporates the preceding paragraphs herein by reference.

32.     Uniloc Luxembourg is the owner, by assignment, of the '960 Patent.

33.     Uniloc USA is the exclusive licensee of the '960 Patent with ownership of all substantial rights therein, including the right to grant sublicenses, to exclude others, and to enforce, sue and recover past damages for the infringement thereof.

34.     Like Uniloc, Defendants rely upon intellectual property to protect their inventions.

35.     Defendants have marketed and currently markets a digital product steaming service under the following names Amazon Video Service for Video ("Video Services") and Store, Prime Music and Music Library Services for Music ("Music Services").

36.     One having access to the Video Services is limited to a number of simultaneous streams. Upon information and belief, the Video Services provides a technical or contractual two simultaneous streams or one simultaneous stream for the same digital product.

37.     While the Video Services provides two simultaneous streams or one simultaneous stream for the same digital product, Defendants allow deviations from this based on certain criteria. In particular, when certain criteria has been satisfied, a single account may stream more than two simultaneous streams or one simultaneous stream for the same digital product.

38.     One having access to the Music Services is limited to a number of simultaneous

streams. Upon information and belief, the Video Services provides a technical or contractual one simultaneous streams.

39. While the Music Services provides one simultaneous streams, Defendants allow deviations from this based on certain criteria. In particular, when certain criteria has been satisfied, a single account may stream more than one simultaneous streams.

40. Upon information and belief, the following describes, at least in part, how Defendants' digital product steaming service works:

## Amazon Video Terms of Use

Last Updated: January 25, 2016

This is an agreement between you and Amazon Digital Services LLC (with its affiliates, "Amazon" or "we"). Please read these terms of use, all rules and policies related to the Amazon Video Service (including, but not limited to, the Amazon Video usage rules, any product-specific rules or usage provisions specified on any product detail page, in any link from a product detail page, or on any help or other informational page for the service), the Amazon.com Privacy Notice, and the Amazon.com Conditions of Use (collectively, this "Agreement"). You accept and agree to the terms of this Agreement by clicking "watch now," "buy," "rent," or their equivalent on the Amazon Video service.

**1. THE SERVICE**

The Amazon Video service (formerly known as Amazon Instant Video) (the "Service") offers digitized versions of movies, television shows, sporting events, news events, and other video content (collectively, "Digital Content") and other services under the conditions set forth in this Agreement. The Service allows you to access and view Digital Content by streaming or downloading a copy. As indicated on the product detail pages of the Service, some Digital Content may be available for streaming only, some Digital Content may be available for download only, and some Digital Content may be available for streaming and download.

**Source**:  http://www.amazon.com/gp/help/customer/display.html?nodeId=201422760

**5. DIGITAL CONTENT**

**a. General**. The Service may allow you to: (i) rent Digital Content for viewing over a limited period of time ("Rental Digital Content"), (ii) purchase Digital Content for viewing over an indefinite period of time ("Purchased Digital Content"), (iii) access Digital Content on a subscription basis for viewing over a limited period of time during a subscription period ("Subscription Digital Content"), and (iv) access Digital Content on a free, ad-supported or promotional basis for viewing over a limited period of time ("Free Digital Content"). Digital Content may be available as Rental Digital Content, Purchased Digital Content, Subscription Digital Content, Free Digital Content, or any combination of those. From time to time, we may add or remove Digital Content from the Service and may change the basis on which Digital Content is available.

**Source**:  http://www.amazon.com/gp/help/customer/display.html?nodeId=201422760

41.    Upon information and belief, the following describes, at least in part, how Defendants' digital product steaming service works:

**6. SOFTWARE**

**a. Use of the Software**. We may make available software for your use in connection with the Service (the "Software"). Terms contained in the Amazon.com Conditions of Use apply to your use of the Software. For additional terms that apply to certain third-party Software, click here.

**b. Information Provided to Amazon.** The Software may provide Amazon with data about your Compatible Device and its interaction with the Service (such as device type, network connectivity, IP address of the device and unique device identifiers that allow us to link your Compatible Device to your Service account). The Software may also provide Amazon with information related to the Digital Content that you download and stream and your use of that Digital Content (such as whether and when you viewed the Digital Content, which may, among other things, help us measure the Viewing Period for Rental Digital Content). Any information we receive is subject to the Amazon.com privacy notice located at https://www.amazon.com/privacy.

**Source**:  http://www.amazon.com/gp/help/customer/display.html?nodeId=201422760

42.    Upon information and belief, the following describes, at least in part, how Defendants' digital product steaming service works:

## Examples of Information Collected

**Information You Give Us**

You provide most such information when you search, buy, post, participate in a contest or questionnaire, or communicate with customer service. For example, you provide information when you search for a product; place an order through Amazon.com or one of our third-party sellers; provide information in Your Account (and you might have more than one if you have used more than one e-mail address when shopping with us) or Your Profile ; communicate with us by phone, e-mail, or otherwise; complete a questionnaire or a contest entry form; use our services such as Amazon Instant Video; compile Wish Lists or other gift registries; participate in Discussion Boards or other community features; provide and rate Reviews; and employ Product Availability Alerts, such as Available to Order Notifications. As a result of those actions, you might supply us with such information as your name, address, and phone numbers; credit card information; people to whom purchases have been shipped, including addresses and phone number; people (with addresses and phone numbers) listed in 1-Click settings; e-mail addresses of your friends and other people; content of reviews and e-mails to us; personal description and photograph in Your Profile ; and financial information, including Social Security and driver's license numbers.

**Source**: https://www.amazon.com/gp/help/customer/display.html?nodeId=468496

43.    Upon information and belief, the following describes, at least in part, how Defendants' digital product steaming service works:

## Automatic Information

Examples of the information we collect and analyze include the Internet protocol (IP) address used to connect your computer to the Internet; login; e-mail address; password; computer and connection information such as browser type, version, and time zone setting, browser plug-in types and versions, operating system, and platform; purchase history, which we sometimes aggregate with similar information from other customers to create features like Top Sellers ; the full Uniform Resource Locator (URL) clickstream to, through, and from our Web site, including date and time; cookie number; products you viewed or searched for; and the phone number you used to call our 800 number. We may also use browser data such as cookies, Flash cookies (also known as Flash Local Shared Objects), or similar data on certain parts of our Web site for fraud prevention and other purposes. During some visits we may use software tools such as JavaScript to measure and collect session information, including page response times, download errors, length of visits to certain pages, page interaction information (such as scrolling, clicks, and mouse-overs), and methods used to browse away from the page. We may also collect technical information to help us identify your device for fraud prevention and diagnostic purposes.

**Source**: https://www.amazon.com/gp/help/customer/display.html?nodeId=468496

44.    Upon information and belief, the following describes, at least in part, how Defendants' digital product steaming service works:

**Purchased Videos**

- **Ways to Watch:** When you purchase a video, we'll make it available to you to stream and download as follows:
  - ○ **Streaming:** You may stream purchased videos online through your Web browser and compatible Internet-connected TVs, Blu-ray players, set-top-boxes, Fire tablets, and other compatible devices. For a list of devices compatible with our service, visit Amazon Video Compatible Devices. You may stream up to two videos at the same time using the same Amazon.com account. You may stream the same video to no more than one device at a time.
  - ○ **Downloading:** You may download videos you purchase to two compatible download devices, such as Fire tablets (other than Kindle Fire 1st Generation) and Android and iOS devices. For a list of compatible devides enabled for downloads, go to Download Prime Video Titles. After downloading a purchased video, you may also stream that video as described above.

**Source**: http://www.amazon.com/gp/help/customer/display.html?nodeId=201422770

45.     Upon information and belief, the following describes, at least in part, how Defendants' digital product steaming service works:



**Rental Videos**

- **Ways To Watch:** When you rent a video, we will make it available to you to stream and download as follows:
  - ○ **Streaming:** You may stream rental videos online through your Web browser and compatible Internet-connected TVs, Blu-ray players, set-top-boxes, Fire tablets, and other compatible devices. For a list of devices compatible with our service, visit Amazon Video Compatible Devices. You may stream up to two videos at the same time using the same Amazon.com account. You may stream the same video to no more than one device at a time.

**Source**: http://www.amazon.com/gp/help/customer/display.html?nodeId=201422770

46.     Upon information and belief, the following describes, at least in part, how Defendants' digital product steaming service works:

**Prime Video**

- **Ways to Watch:**
    ○ **Streaming**: Prime Video titles are available for online streaming. You can stream Prime Video titles online through your Web browser, and Internet-connected TVs, Blu-ray players, and set-top-boxes, Fire tablets and other compatible devices. For a list of compatible devices, go to Amazon Video Compatible Devices. You can stream up to two titles at the same time using the same Amazon.com account. You can stream the same title to no more than one device at a time.

**Source**: http://www.amazon.com/gp/help/customer/display.html?nodeId=201422770

47.     Upon information and belief, the following describes, at least in part, how Defendants' digital product steaming service works:



**First Episode Free**

- **Ways to Watch:** First Episode Free videos are only available for online streaming on selected devices. They are not available for download. You may stream up to two videos at the same time using the same Amazon.com account. You may stream the same video to no more than one device at a time. While First Episode Free videos are not available for download, the same videos may be available for purchase or rental through Amazon Video, or viewing through a Amazon Prime or Prime Video membership or free trial. Purchased and rented titles, as well as many Prime Video titles, can be downloaded to compatible devices.

**Source**: http://www.amazon.com/gp/help/customer/display.html?nodeId=201422770

48.     Upon information and belief, the following describes, at least in part, how Defendants' digital product steaming service works:

## Amazon Music Terms of Use

**Last updated April 12, 2016**

This is an agreement between you and Amazon Digital Services LLC (with its affiliates, "Amazon", "we" or "us") regarding the Store, Prime Music and the Music Library Service (collectively, the "Services"). The Services allow you to purchase and access digital versions of audio recordings, artwork and information relating to the audio recordings, and other content (collectively, "Music Content"), as described below. Before using the Services, please read these Terms of Use, all rules and policies related to the Services (including any specific rules, usage restrictions and other conditions or procedures that we post or update on or through the Services or on Amazon.com), the Amazon.com Privacy Notice, and the Amazon.com Conditions of Use (collectively, the "Agreement"). If you use any of the Services, you are agreeing to the terms and conditions of the Agreement.

**1. THE SERVICES**.

**1.1 The Store.** The Digital Music Store (the "Store") allows you to purchase Music Content ("Purchased Music"). Unless otherwise specified, all sales are final and risk of loss transfers upon sale. We do not accept returns of Purchased Music. When you purchase Music Content from the Store, you are directing us to store that Purchased Music in the Music Library Service.

**1.2 Prime Music**. Prime Music allows you to access certain Music Content from our catalog ("Prime Music Content") on a limited basis if you (a) are eligible for the Prime Music benefit under the Amazon Prime Terms & Conditions, and (b) opt-in to Prime Music by playing Prime Music Content.

**Source**:http://www.amazon.com/gp/help/customer/display.html?nodeId=201380010

49.    Upon information and belief, the following describes, at least in part, how Defendants' digital product steaming service works:

## About Streaming Prime Music on Multiple Devices

You can only stream Prime Music on one of your devices at a time.

If you're already streaming Prime Music on one of your devices and then start streaming Prime Music from another device, you'll see a notification asking whether you'd like to continue streaming from the new device instead.

To switch to the new device, select **Continue**. To keep streaming from the first device, select **Cancel**.

**Note:** This only applies to streaming Prime Music. If you have Prime Music downloaded to a mobile device, you can play that downloaded music and stream Prime Music from another device at the same time.

You can download Prime Music to a maximum of four authorized devices on your Amazon account. If you try to download Prime Music to a fifth device, you'll be prompted to deactivate the Prime Music downloads on another device before you can continue.

**Source**: https://www.amazon.com/gp/help/customer/display.html?ref=hp_left_v4_sib?ie=UTF8&n odeId=201535280

50.     Upon information and belief, the following describes, at least in part, how Defendants' digital product steaming service works:



51.     Upon information and belief, the following describes, at least in part, how Defendants' digital product steaming service works:



52.     Upon information and belief, the following shows cookies used in streaming for the

Music Services:

| Name | Domain | Raw Size |
|---|---|---|
| ⊞ skin | .amazon.com | 10 B |
| ⊞ csm-hit | www.amazon.com | 64 B |
| ⊞ at-main | .amazon.com | 379 B |
| ⊞ session-id-time | .amazon.com | 26 B |
| ⊞ csm-hit | music.amazon.com | 64 B |
| ⊞ x-wl-uid | .amazon.com | 149 B |
| ⊞ session-id | .amazon.com | 29 B |
| ⊞ ubid-main | .amazon.com | 28 B |
| ⊞ a-ogbcbff | .amazon.com | 10 B |
| ⊞ session-token | .amazon.com | 295 B |
| ⊞ sess-at-main | .amazon.com | 58 B |
| ⊞ x-main | .amazon.com | 40 B |

53.     Upon information and belief, the following shows details of example gets and posts

used in streaming for the Music Services:

| | | | |
|---|---|---|---|
| POST /cirrus/ | music.amazon.com | 143 B | 54.239.28.193:443 |
| POST /cirrus/ | music.amazon.com | 144 B | 54.239.28.193:443 |
| POST /dmls/ | music.amazon.com | 349 B | 54.239.28.193:443 |
| POST /cirrus/v3/ | music.amazon.com | 22 B | 72.21.195.40:443 |
| GET 5a6335e82d | album-art-storage-us.s3.amazonaws.com | 16.2 KB | 54.231.114.90:443 |
| GET checkPIcon. | images-na.ssl-images-amazon.com | 556 B | 54.230.123.88:443 |
| POST ref=dm_wc | music.amazon.com | 28 B | 72.21.195.40:443 |
| POST /cirrus/v3/ | music.amazon.com | 22 B | 72.21.195.40:443 |
| GET 5a6335e82d | album-art-storage-us.s3.amazonaws.com | 16.2 KB | 54.231.98.120:443 |
| GET 5a6335e82d | album-art-storage-us.s3.amazonaws.com | 16.2 KB | 54.231.114.90:443 |
| POST /dmls/ | music.amazon.com | 6.6 KB | 72.21.195.40:443 |
| GET c2343430-d: | d29r7idq0wxsiz.cloudfront.net | 401.3 KB | 52.85.202.166:443 |
| GET cf0e7a8d-32 | d29r7idq0wxsiz.cloudfront.net | 403.5 KB | 52.85.202.166:443 |
| POST /cirrus/v3/ | music.amazon.com | 22 B | 72.21.195.40:443 |
| POST /cirrus/v3/ | music.amazon.com | 22 B | 72.21.195.40:443 |
| GET ATVPDKIKX0 | fls-na.amazon.com | 0 B | 54.239.30.252:443 |
| POST /dmls/ | music.amazon.com | 349 B | 72.21.195.40:443 |
| GET c2343430-d: | d29r7idq0wxsiz.cloudfront.net | 399.5 KB | 52.85.202.166:443 |

| | | | |
|---|---|---|---|
| GET c2343430-d: | d29r7idq0wxsiz.cloudfront.net | 403.0 KB | 52.85.202.166:443 |
| POST /cirrus/v3/ | music.amazon.com | 22 B | 72.21.195.40:443 |
| GET ATVPDKIKX0 | fls-na.amazon.com | 0 B | 54.239.30.252:443 |
| POST /dmls/ | music.amazon.com | 347 B | 72.21.195.40:443 |
| POST /cirrus/ | music.amazon.com | 144 B | 72.21.195.40:443 |
| GET ATVPDKIKX0 | fls-na.amazon.com | 0 B | 54.239.30.252:443 |
| GET c2343430-d: | d29r7idq0wxsiz.cloudfront.net | 405.0 KB | 52.85.202.166:443 |
| GET c2343430-d: | d29r7idq0wxsiz.cloudfront.net | 405.4 KB | 52.85.202.166:443 |
| GET c2343430-d: | d29r7idq0wxsiz.cloudfront.net | 406.5 KB | 52.85.202.166:443 |
| POST getRecomr | music.amazon.com | 2.3 KB | 72.21.195.40:443 |
| GET 51Ilv5wMc1l | images-na.ssl-images-amazon.com | 2.1 KB | 54.230.123.88:443 |
| GET 51XLJXxZjLL | images-na.ssl-images-amazon.com | 1.2 KB | 54.230.123.88:443 |
| GET c2343430-d: | d29r7idq0wxsiz.cloudfront.net | 401.3 KB | 52.85.202.166:443 |
| GET c2343430-d: | d29r7idq0wxsiz.cloudfront.net | 406.3 KB | 52.85.202.166:443 |
| GET c2343430-d: | d29r7idq0wxsiz.cloudfront.net | 411.8 KB | 52.85.202.166:443 |
| POST morpho | amazonmusiclocal.com:18803 | 0 B | |
| GET c2343430-d: | d29r7idq0wxsiz.cloudfront.net | 404.8 KB | 52.85.202.166:443 |
| GET c2343430-d: | d29r7idq0wxsiz.cloudfront.net | 407.8 KB | 52.85.202.166:443 |

54.     Upon information and belief, the following shows cookies used in streaming for the

Video Services:

| Name | Domain | Raw Size |
|---|---|---|
| ⊞ skin | .amazon.com | 10 B |
| ⊞ at-main | .amazon.com | 379 B |
| ⊞ session-id-time | .amazon.com | 26 B |
| ⊞ x-wl-uid | .amazon.com | 149 B |
| ⊞ session-id | .amazon.com | 29 B |
| ⊞ ubid-main | .amazon.com | 28 B |
| ⊞ csm-hit | www.amazon.com | 64 B |
| ⊞ a-ogbcbff | .amazon.com | 10 B |
| ⊞ session-token | .amazon.com | 295 B |
| ⊞ x-main | .amazon.com | 40 B |

55.     Upon information and belief, the following shows details of example gets and posts used in streaming for the Video Services:

| | | | |
|---|---|---|---|
| ⊞ GET ReportEvent: | atv-ps.amazon.com | 262 B | 72.21.215.50:443 |
| ⊞ POST OE | fls-na.amazon.com | 0 B | 54.239.22.50:443 |
| ⊞ GET SilverlightPla | fls-na.amazon.com | 0 B | 54.239.22.50:443 |
| ⊞ GET SilverlightPla | fls-na.amazon.com | 0 B | 54.239.22.50:443 |
| ⊞ GET ATVSilverligh | avodassets-a.akamaihd.net | 1.4 MB | 96.17.177.18:80 |
| ⊞ GET SilverlightPla | fls-na.amazon.com | 0 B | 54.239.22.50:443 |
| ⊞ GET SilverlightPla | fls-na.amazon.com | 0 B | 54.239.22.50:443 |
| ⊞ GET clientaccessp | atv-ps.amazon.com | 201 B | 72.21.215.50:443 |
| ⊞ POST ReportEven | atv-ps.amazon.com | 264 B | 72.21.215.50:443 |
| ⊞ POST ReportEven | atv-ps.amazon.com | 264 B | 72.21.215.50:443 |
| ⊞ POST ReportEven | atv-ps.amazon.com | 264 B | 72.21.215.50:443 |
| ⊞ POST ReportEven | atv-ps.amazon.com | 264 B | 72.21.215.50:443 |
| ⊞ GET clientaccessp | ds79lt46qzmj0.cloudfront.net | 359 B | 54.182.197.120:80 |
| ⊞ GET clientaccessp | dmqdd6hw24ucf.cloudfront.net | 359 B | 52.85.202.178:80 |
| ⊞ GET fdc0c727-bb2 | dmqdd6hw24ucf.cloudfront.net | 53.8 KB | 52.85.202.178:80 |
| ⊞ POST /1/batch/1, | fls-na.amazon.com | 0 B | 54.239.22.50:80 |
| ⊞ GET Fragments(v | ds79lt46qzmj0.cloudfront.net | 688.9 KB | 54.182.197.120:80 |

| | | | |
|---|---|---|---|
| ⊞ **GET Fragments(a** | ds79lt46qzmj0.cloudfront.net | 32.3 KB | 54.182.197.120:80 |
| ⊞ **POST OE** | fls-na.amazon.com | 0 B | 54.239.22.50:443 |
| ⊞ **GET Fragments(a** | ds79lt46qzmj0.cloudfront.net | 32.3 KB | 54.182.197.120:80 |
| ⊞ **GET Fragments(v** | ds79lt46qzmj0.cloudfront.net | 664.6 KB | 54.182.197.120:80 |
| ⊞ **GET Fragments(a** | ds79lt46qzmj0.cloudfront.net | 32.4 KB | 54.182.197.120:80 |
| ⊞ **GET Fragments(a** | ds79lt46qzmj0.cloudfront.net | 32.3 KB | 54.182.197.120:80 |
| ⊞ **GET Fragments(v** | ds79lt46qzmj0.cloudfront.net | 1.2 MB | 54.182.197.120:80 |
| ⊞ **GET Fragments(a** | ds79lt46qzmj0.cloudfront.net | 32.3 KB | 54.182.197.120:80 |
| ⊞ **GET Fragments(a** | ds79lt46qzmj0.cloudfront.net | 32.3 KB | 54.182.197.120:80 |
| ⊞ **GET Fragments(v** | ds79lt46qzmj0.cloudfront.net | 989.1 KB | 54.182.197.120:80 |
| ⊞ **GET Fragments(v** | ds79lt46qzmj0.cloudfront.net | 1,000.8 KB | 54.182.197.120:80 |
| ⊞ **GET Fragments(a** | ds79lt46qzmj0.cloudfront.net | 32.3 KB | 54.182.197.120:80 |
| ⊞ **GET ATVPDKIKX0I** | fls-na.amazon.com | 43 B | 54.239.22.50:80 |
| ⊞ **POST ReportEven** | atv-ps.amazon.com | 264 B | 72.21.215.50:443 |
| ⊞ **POST ReportEven** | atv-ps.amazon.com | 264 B | 72.21.215.50:443 |
| ⊞ **POST ReportEven** | atv-ps.amazon.com | 264 B | 72.21.215.50:443 |
| ⊞ **GET Fragments(v** | ds79lt46qzmj0.cloudfront.net | 84.9 KB | 54.182.197.120:80 |

| | | | |
|---|---|---|---|
| ⊞ **GET Fragments(a** | ds79lt46qzmj0.cloudfront.net | 32.3 KB | 54.182.197.120:80 |
| ⊞ **GET Fragments(v** | ds79lt46qzmj0.cloudfront.net | 1.1 MB | 54.182.197.20:80 |
| ⊞ **GET Fragments(a** | ds79lt46qzmj0.cloudfront.net | 32.3 KB | 54.182.197.20:80 |
| ⊞ **GET Fragments(a** | ds79lt46qzmj0.cloudfront.net | 32.3 KB | 54.182.197.120:80 |
| ⊞ **GET Fragments(a** | ds79lt46qzmj0.cloudfront.net | 32.4 KB | 54.182.197.120:80 |
| ⊞ **GET Fragments(v** | ds79lt46qzmj0.cloudfront.net | 1.0 MB | 54.182.197.120:80 |
| ⊞ **POST ReportEven** | atv-ps.amazon.com | 265 B | 72.21.215.50:443 |
| ⊞ **GET Fragments(a** | ds79lt46qzmj0.cloudfront.net | 32.3 KB | 54.182.197.20:80 |
| ⊞ **GET Fragments(v** | ds79lt46qzmj0.cloudfront.net | 1.2 MB | 54.182.197.120:80 |
| ⊞ **GET Fragments(a** | ds79lt46qzmj0.cloudfront.net | 32.3 KB | 54.182.197.20:80 |
| ⊞ **GET Fragments(v** | ds79lt46qzmj0.cloudfront.net | 989.1 KB | 54.182.197.120:80 |
| ⊞ **GET Fragments(a** | ds79lt46qzmj0.cloudfront.net | 32.3 KB | 54.182.197.20:80 |
| ⊞ **GET Fragments(v** | ds79lt46qzmj0.cloudfront.net | 1,000.8 KB | 54.182.197.120:80 |
| ⊞ **GET Fragments(a** | ds79lt46qzmj0.cloudfront.net | 32.3 KB | 54.182.197.20:80 |
| ⊞ **POST Clickstream** | atv-ps.amazon.com | 72 B | 72.21.215.50:443 |
| ⊞ **GET SilverlightPla** | fls-na.amazon.com | 0 B | 54.239.22.50:443 |
| ⊞ **GET SilverlightPla** | fls-na.amazon.com | 0 B | 54.239.22.50:443 |

56.     Defendants have directly infringed, and continue to directly infringe one or more claims of the '960 Patent in this judicial district and elsewhere in Texas, including at least Claims 1-5, 7-8, 18, 22, and 25 literally and/or under the doctrine of equivalents, by or through making,

using, importing, offering for sale and/or selling its digital product steaming service during the pendency of the '960 Patent which *inter alia* comprises instructions for allowing a digital product to be used when a device identify is on record, calculating device count authorized for use with the digital product, setting a limit for a time period when a device identity is not on record, and allowing the digital product to be used when the device count is less than the limit.

57.     In addition, should Defendants' digital product steaming service be found to not literally infringe the asserted claims of the '960 Patent, Defendants' accused products would nevertheless infringe the asserted claims of the '960 Patent. More specifically, the accused digital product steaming service performs substantially the same function (adjusting access to a digital product), in substantially the same way (comprising computer readable instructions contained in or loaded into non-transitory memory) to yield substantially the same result (effecting time-limited access to the digital product). Defendants would thus be liable for direct infringement under the doctrine of equivalents.

58.     Defendants may have infringed the '960 Patent through other software, currently unknown to Uniloc, utilizing the same or reasonably similar functionality, including other versions of its digital product steaming service. Uniloc reserves the right to discover and pursue all such additional infringing software.

59.     Uniloc has been damaged, reparably and irreparably, by Defendants' infringement of the '960 Patent and such damage will continue unless and until Defendants are enjoined.

60.     Uniloc has entered into a Patent License, Release and Settlement Agreement with Flexera Software LLC ("Flexera"). Uniloc is not alleging infringement of the '960 Patent based on any product, software, system, method or service provided by Flexera Software LLC or any Flexera

Predecessor ("Flexera Products"). For the purposes of this action, a Flexera Predecessor is any predecessor business owned or controlled by Flexera, including, but not limited to, C-Dilla Limited, GLOBEtrotter Software, Inc., InstallShield Software Corporation, Flexera Holding LLC, Flex co Holding Company, Inc., Flexera Software Inc., Acresso Software Inc., Intraware, Inc., Managesoft Corporation, HONICO Software GmbH, LinkRight Software L.L.C., and Logiknet, Inc. (d/b/a SCCM Expert) and only to the extent of, and limited to, the specific business, technologies and products acquired by Flexera from each of them, and Macrovision Corporation (renamed Rovi Solutions Corporation in July 2009) only to the extent of, and limited to, the specific business, technologies and products acquired by Flexera Holdings Company, Inc. in April 2008 (renamed Acresso Software Inc.), which later changed its name in October 2009 to Flexera Software LLC. For purposes of this action, Flexera Products do not include any third party products or services that provide activation, entitlement, licensing, usage monitoring and management, auditing, or registration functionality or third party products and services that are activated, licensed or registered exclusively and independently of products, software, systems, methods or services provided by Flexera or Flexera Predecessors. All allegations of past infringement against defendant(s) herein are made exclusively and independently of the authorized use of Flexera Products.

## JURY DEMAND

61.     Uniloc hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

# PRAYER FOR RELIEF

Uniloc requests that the Court find in its favor and against Defendants, and that the Court grant Uniloc the following relief:

(A)    that Defendants have infringed the '960 Patent;

(B)    awarding Uniloc its damages suffered as a result of Defendants' infringement of the '960 Patent pursuant to 35 U.S.C. § 284;

(C)    enjoining Defendants, their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries and parents, and all others acting in concert or privity with it from infringing the '960 Patent pursuant to 35 U.S.C. § 283;

(D)    awarding Uniloc its costs, attorneys' fees, expenses and interest, and

(E)    granting Uniloc such other and further relief as the Court may deem just and proper.


**Dated:  May 30, 2016**          Respectfully submitted,

*/s/ James L. Etheridge*

James L. Etheridge
Texas State Bar No. 24059147
Ryan S. Loveless
Texas State Bar No. 24036997
Brett A. Mangrum
Texas State Bar No. 24065671
Travis L. Richins
Texas State Bar No. 24061296
ETHERIDGE LAW GROUP, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092
Telephone: (817) 470-7249
Facsimile: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Brett@EtheridgeLaw.com
Travis@EtheridgeLaw.com

***Counsel for Plaintiffs Uniloc USA, Inc. and Uniloc Luxembourg S.A.***