# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| UNILOC USA, INC. and<br>UNILOC LUXEMBOURG S.A.,<br><br>        Plaintiffs,<br><br>    v.<br><br>AMAZON.COM, INC. and AMAZON DIGITAL SERVICES, INC.,<br><br>        Defendants; | Case No. 2:16-cv-00570-RWS<br>(Lead Case) |
| UNILOC USA, INC. and<br>UNILOC LUXEMBOURG S.A.,<br><br>        Plaintiffs,<br><br>    v.<br><br>HULU, LLC,<br><br>        Defendant; | Case No. 2:16-cv-00573-RWS |
| UNILOC USA, INC. and<br>UNILOC LUXEMBOURG S.A.,<br><br>        Plaintiffs,<br><br>    v.<br><br>NETFLIX, INC.,<br><br>        Defendant; | Case No. 2:16-cv-00574-RWS |

| UNILOC USA, INC. and UNILOC LUXEMBOURG S.A., | |
|---|---|
| Plaintiffs, | Case No. 2:16-cv-00572-RWS |
| v. | |
| HOME BOX OFFICE, INC., | |
| Defendant. | |

**DEFENDANTS' MOTION FOR ATTORNEYS' FEES**

## Table of Contents

|  |  | Page No. |
|---|---|---|
| I. | SUMMARY OF THE ISSUE TO BE DECIDED | 1 |
| II. | RELEVANT BACKGROUND | 1 |
|  | A. Uniloc | 1 |
|  | B. Technology to Limit Access to Digital Products | 2 |
|  | C. Uniloc's Adjustable Device Limit Patent | 3 |
|  | D. Defendants' Simultaneous Stream Limit Systems | 3 |
|  | E. Uniloc's Complaints and Defendants' Motion to Dismiss | 4 |
|  | F. Microsoft's Adjustable Device Limit Patent | 5 |
| III. | LEGAL STANDARD | 6 |
| IV. | THE COURT SHOULD AWARD ATTORNEY FEES AGAINST UNILOC. | 7 |
|  | A. These Cases Are Exceptional Because Uniloc's Position That the '960 Patent Claims Patentable Subject Matter Was Objectively Unreasonable. | 7 |
|  | B. Uniloc's Litigation Conduct Also Caused Defendants to Incur Additional Unnecessary Expense in Defending Against Uniloc's Claims. | 11 |
| V. | CONCLUSION | 12 |

# Table of Authorities

**CASES**                                                                                                                               **PAGES**

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013) ..........................................................................................10

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
   2016 WL 5335501 (Fed. Cir. Sept. 23, 2016) ....................................................................10

*Alice Corp. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ................................................................................................ passim

*Edekka LLC v. 3balls.com, Inc.*,
   No. 2:15-cv-541-JRG, 2015 WL 9225038 (E.D. Tex. Dec. 17, 2015) ...............................7, 8

*Inventor Holdings, LLC v. Bed Bath & Beyond Inc.*,
   No. 14-448-GMS, 2016 WL 3090633 (D. Del. May 31, 2016) .........................................7, 11

*Lugus IP, LLC v. Volvo Car Corp.*,
   No. 12-2906, 2015 WL 1399175 (D.N.J. Mar. 26, 2015) .........................................................7

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   134 S. Ct. 1749 (2014) ...........................................................................................................6

*Sorkin v. Universal Bldg. Products Inc.*,
   No. 1:08-cv-133, 2010 WL 519742 (E.D. Tex. Feb. 9, 2010) ...............................................6

*Uniloc USA, Inc. v. Med. Info. Tech., Inc.*,
   No. 6:16-cv-463-RWS, Dkt. No. 133 at 3 (E.D. Tex. Jan. 26, 2017) ....................................12

*Yufa v. TSI Inc.*,
   No. 09-cv-01315-KAW, 2014 WL 4071902 (N.D. Cal. Aug. 14, 2014) ................................7

**STATUTES**

35 U.S.C. § 101 ............................................................................................................. passim

35 U.S.C. § 285 ....................................................................................................1, 6, 7, 11

**OTHER AUTHORITIES**

Patent Rule 4-1(a) ...............................................................................................................11

Patent Rule 4-2 ....................................................................................................................11

Defendants Amazon.com, Inc., Amazon Digital Services, Inc. ( "Amazon"), Hulu, LLC, Netflix, Inc., and Home Box Office, Inc. ("HBO") request the Court to declare the above-captioned cases exceptional under 35 U.S.C. § 285 and to grant Defendants' request for attorneys' fees and expenses against Plaintiffs Uniloc USA, Inc. and Uniloc Luxembourg S.A. ("Uniloc").

## I.   SUMMARY OF THE ISSUE TO BE DECIDED

At every turn and in every way, these cases lacked merit. Had Uniloc conducted a reasonable analysis of the claims of U.S. Patent No. 8,566,960 ("'960 patent"), it would have concluded that the patent claims are invalid because they are not only directed to an abstract idea, as the Court found in granting Defendants' motion to dismiss, but also invalid because they are anticipated by a Microsoft patent filed seven years before the patent-in-suit, and not infringed because publicly-available documentation demonstrates that Defendants' various accused systems operate in a completely different manner than the claimed subject matter. Had Uniloc conducted an adequate pre-suit investigation, it never would have filed these lawsuits, and Defendants would not have been subjected to the expense of defending against Uniloc's baseless complaints. For these reasons, Defendants respectfully request that the Court declare these cases exceptional and award Defendants their attorneys' fees and expenses.

## II.   RELEVANT BACKGROUND

### A.   Uniloc

Uniloc is a prolific patent assertion entity. Since the beginning of 2012, Uniloc entities have filed nearly 300 lawsuits, with 87 in 2016 alone and 20 in just the last month.[1] Ex. A at 3-15. The median time for termination of Uniloc's cases is less than one year. *Id*. at 1.

---

[1] Ryan Davis, *4 Frequent Filers of IP Suits to Watch This Year*, Law360 (Mar. 1, 2017), https://www.law360.com/articles/895329/4-frequent-filers-of-ip-suits-to-watch-this-year.

### B. Technology to Limit Access to Digital Products

Even the '960 patent recognized that long before its filing, the software industry faced the issue of how to allow licensed users the freedom to access digital products from multiple devices while maintaining sufficient restrictions on access to prevent piracy and copyright abuse. '960 patent at 1:31-47. One well-known solution, used by prior art systems such as Apple's iTunes, provided users with a license that contained a device limit restricting the number of different devices through which a user could access the digital product. *Id*. at 49-55. This device limit method enabled a user to access a digital product from his or her different devices, but it provided a check against users sharing their license information (such as a user ID and password) with others because the system tracked the identification of the devices used to access the system and, once the device limit was reached, requests for access from additional devices were denied. This created a problem, however, when a user had already reached his or her device limit but then replaced an older device with new one. To allow for such upgrades, while still enforcing the device limit, these prior art systems allowed users to deactivate old devices and then activate the new replacement devices. *Id*. at 1:55-60.

A separate licensing technique for preventing piracy and copyright abuse was developed in which access to digital products was restricted based on a simultaneous use limit, as opposed to the previously used limit on the total number of devices. According to this simultaneous use limit method, a license might, for example, permit a user to access online content simultaneously from only one device at a time. The user could, however, access the digital product with, for example, a different device every single day or every single hour or every single minute, so long as the user did not try to access the content from two devices simultaneously. Such simultaneous use licenses therefore do not encounter a problem when a user acquires new devices—the user can use the new

device to access the digital product so long as the user is not simultaneously accessing the digital product from enough other devices to cause the user to exceed the simultaneous use limit.

### C. Uniloc's Adjustable Device Limit Patent

The '960 patent, entitled "System and Method for Adjustable Licensing of Digital Products," was filed November 17, 2008 and issued October 22, 2013, approximately eight months prior to the Supreme Court's decision in *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2358 (2014).

In the "Background of the Invention" section of the specification, the '960 patent discusses the problem that device limit systems create by precluding users that have reached their device limit from using new devices to access the digital content. '960 patent at 1:31-60. The '960 patent acknowledged that prior art systems allowed users to deactivate an old device then activate a new device. *Id*. at 1:61-66.

Instead of a static device limit, the '960 patent purports to solve this same problem through a system that "allow[s] for a changing number of device installations on a per license basis over time." *See id*. at 3:41-42. As an example, the patent discloses a limit of five devices for the first five days, seven devices for the next 25 days, and eleven devices thereafter. *Id.* at 4:27-34. This time-adjustable device limit method of the '960 patent is the purported solution to the problem encountered by fixed device limit systems when users obtain new devices over time due to device attrition and upgrades.

### D. Defendants' Simultaneous Stream Limit Systems

Defendants—Amazon, HBO, Hulu, and Netflix—are leaders in the field of digital content streaming technology. As such, each has developed and implemented systems to enforce licensing terms and restrict unauthorized access to digital content. And while these systems vary in many

ways, they all restrict access to content through the enforcement of simultaneous stream or use limits.

Defendants' use of simultaneous stream limits to manage access was not a confidential trade secret. For example, simultaneous stream limits are not only advertised but are an explicit choice illustrated on the Netflix home page. The desired simultaneous stream limit is selected by a new user on the sign-up page for Netflix, and the selection dictates cost of the service. It is the primary product differentiator Netflix has—1, 2, or 4 simultaneous streams at varying prices. Before filing these complaints asserting the '960 patent, Uniloc knew that the accused systems used simultaneous stream limits because that is the functionality Uniloc accused in its complaints.[2]

### E. Uniloc's Complaints and Defendants' Motion to Dismiss

Uniloc filed its complaints asserting its device limit patent against Defendants' simultaneous stream limit systems on May 30, 2016. In those complaints, in recognition that the '960 patent was susceptible to challenge under 35 U.S.C. § 101, Uniloc included arguments as to why the claims were allegedly patentable. *See*, *e.g.*, Dkt. No. 7 at ¶¶ 14-23.

---

[2] *See*, *e.g.*, Amazon Compl., Dkt. No. 7 at ¶ 36 ("One having access to the Video Services is *limited to a number of simultaneous streams*. Upon information and belief, the Video Services provides a technical or contractual two simultaneous streams or one simultaneous stream for the same digital product.") (emphasis added); Hulu Compl., Case No. 2:16-cv-573-RWS, Dkt. No. 7 at ¶ 37 ("One subscribing to this $7.99/month with commercials or $11.99/month for no commericals [sic] service is *limited to a number of simultaneous streams*. Upon information and belief, the $7.99/month with commercials or $11.99/month for no commericals [sic] service provides a technical or contractual one simultaneous stream.") (emphasis added); Netflix Compl., Case No. 2:16-cv-574-RWS, Dkt. No. 1 at ¶ 36 ("One subscribing to this $7.99/month service is *limited to a number of simultaneous streams*. Upon information and belief, the $7.99/month service provides a technical or contractual one simultaneous stream.") (emphasis added); HBO Compl., Case No. 2:16-cv-572-RWS, Dkt. No. 1 at ¶ 35 ("One subscribing to this $14.99 service is *limited to a number of simultaneous streams*. Upon information and belief, the $14.99 service provides a technical or contractual three simultaneous streams.") (emphasis added). (Unless another case number is specified in the citation, citations herein to a Docket Number refer to a filing in the lead case against Amazon, Case No. 2:16-cv-570-RWS.)

Defendants responded with motions to dismiss pursuant to 35 U.S.C. § 101 because the claims were directed to an abstract idea.

This Court granted that motion on March 20, 2017. Consistent with *Alice*, this Court held that "[t]he time-adjustable license is an abstract idea because licensing is a fundamental economic practice and because licenses are abstract exchanges of intangible contractual obligations." Dkt. No. 113 at 7. The Court further held that the patent claims do nothing more than "instruct the person of ordinary skill to implement the time-adjustable license using a computer." *Id.* at 20. The Court made this determination based upon the plain language of the claims and, where constructions were asserted by Uniloc, by applying Uniloc's proposed constructions. An adequate pre-suit analysis would have led Uniloc to the same conclusion.

But that was not the only deficiency in Uniloc's case; Uniloc also had no basis for asserting infringement. As discussed above, Defendants solved the problem of limiting access to digital products through a different solution than that of the '960 patent. Rather than limiting the number of devices allowed to access the digital product and then varying the limit over time in the manner described in the patent, Defendants' systems limited the number of simultaneous streams that could be used per each user account. As reflected by the publicly available information cited in Uniloc's complaints, Uniloc knew before it filed those complaints that the accused systems used simultaneous stream limits.

### F. Microsoft's Adjustable Device Limit Patent

If Uniloc did not know before it filed suit, it learned at least as early as December of 2016 that a Microsoft patent, U.S. Patent No. 7,047,411 ("DeMello"), disclosed the same time-adjustable device limit system that was claimed in the '960 patent. *See* Case 2:16-cv-00570-RWS, Dkt. No. 78. DeMello, which issued more than seven years before the earliest possible priority date for the '960 patent, discloses:

> In accordance with a feature of the invention, the number of devices that a particular persona may activate may be limited by rate and or by number (e.g., five activations within a first 90 day period, followed by an additional activation for every subsequent 90 day period, up to a maximum of ten activations), thereby preventing the unchecked proliferation of devices on which individualized content can be rendered.

Case 2:16-cv-00570-RWS, Dkt. No. 78, Ex. 1 at 2:60-67. Though the specific device limits and time periods vary, this is the same time-adjustable device limit system disclosed and claimed in the '960 patent.

> For the first five days of the users use of the software a total of five devices can be authorized on new devices. For the next twenty-five days until the thirtieth day after first authorization, the user is allowed to authorize a total of seven new devices. After the first thirty days an additional four devices can be authorized, delivering the maximum number of copies on separate devices under the license which, in this example embodiment, is eleven.

'960 patent at 4:27-34.

Defendants identified DeMello to Uniloc in December, but Uniloc nevertheless forged ahead in pursuing its claims, thereby forcing Defendants to incur needless expense.

## III. LEGAL STANDARD

"The court in exceptional cases may award reasonable attorney fees[3] to the prevailing party." 35 U.S.C. § 285. Bad faith is not required; an exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756-57 (2014). The circumstances a court should consider include "frivolousness, motivation, objective

---

[3] When a court finds that a case is exceptional, it can award the prevailing party both its attorney fees and expenses incurred in litigating the case. *Sorkin v. Universal Bldg. Products Inc.*, No. 1:08-cv-133, 2010 WL 519742, at *6 (E.D. Tex. Feb. 9, 2010) (awarding costs in addition to attorneys' fees after finding case exceptional under section 285). Through this motion, Defendants seek both their attorneys' fees and expenses, but will use the term "attorneys' fees" as a shorthand reference to both.

unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 1756 n.6. Courts should consider the totality of the circumstances in deciding whether to award fees, and the preponderance of the evidence standards applies. *Id*. at 1756, 1759.

Since *Octane Fitness*, courts including the Eastern District of Texas have deemed cases exceptional where the plaintiff asserted patent claims that were dismissed for claiming unpatentable subject matter. *See, e.g.*, *Edekka LLC v. 3balls.com, Inc.*, No. 2:15-cv-541-JRG, 2015 WL 9225038, at *1 (E.D. Tex. Dec. 17, 2015) (finding case exceptional under section 285 where patentee's section 101 position was objectively unreasonable); *Inventor Holdings, LLC v. Bed Bath & Beyond Inc.*, No. 14-448-GMS, 2016 WL 3090633 (D. Del. May 31, 2016).

An award of attorneys' fees is also appropriate when the plaintiff has "no objectively reasonable basis to contend that [the accused products] infringed." *Lugus IP, LLC v. Volvo Car Corp.*, No. 12-2906 JEI/JS, 2015 WL 1399175, at *6 (D.N.J. Mar. 26, 2015), appeal dismissed (Mar. 16, 2016). Particularly because the evidence does not support the infringement read of Defendants' accused systems, Uniloc "should have known that [t]his case was meritless." *Yufa v. TSI Inc.*, No. 09-cv-01315-KAW, 2014 WL 4071902, at *3 (N.D. Cal. Aug. 14, 2014).[4]

## IV. THE COURT SHOULD AWARD ATTORNEY FEES AGAINST UNILOC.

### A. These Cases Are Exceptional Because Uniloc's Position That the '960 Patent Claims Patentable Subject Matter Was Objectively Unreasonable.

District courts have the power to award fees under section 285 when the ineligibility of the claims is readily apparent. *See, e.g.*, *eDekka*, 2015 WL 9225038; *Inventor Holdings*, 2016 WL

---

[4] Because the Court held the claims of the '960 patent invalid pursuant to 35 U.S.C. § 101, Defendants have focused on that issue below. The lack of infringement by the accused systems and the anticipation by DeMello, however, demonstrate that Uniloc's assertion of the '960 patent was meritless on multiple grounds.

3090633.  In *eDekka*, Judge Gilstrap held that eDekka's position that the patent claims were valid under section 101 was objectively unreasonable.  2015 WL 9225038, at * 2.  In reaching that conclusion, he found that the asserted patent claims were demonstrably weak on their face, despite the presumption of validity that attaches to an issued patent.  *Id*.  He also relied on the fact that the Court did not need to construe the claims to reach the conclusion that the claims were directed to unpatentable subject matter.  *Id*.  Judge Gilstrap further relied on the fact that eDekka proffered untenable positions during the section 101 briefing process, such as an argument that that the patented claims "improve the functioning of technology."  *Id*.

The claims of the '960 patent and Uniloc's positions defending them show the same failures.  As this Court held, "[t]he time-adjustable license is an abstract idea because licensing is a fundamental economic practice and because licenses are abstract exchanges of intangible contractual obligations."  Dkt. No. 113 at 7.

Uniloc's primary argument in support of the patentability of its claims was baseless and intended solely to obfuscate the *Alice* analysis.  Uniloc repeatedly mischaracterized its claimed invention as one that "adjusted" a device limit by "newly setting" that device limit for a "first time period."  *See*, *e.g.*, Dkt. No. 21 at 5-6; Dkt. No. 35 at 5.  No reasonable litigant would argue that a limit is "adjusted" when it is "newly set" for the first time.  Instead, as disclosed in the '960 patent, "adjusting" in the context of the alleged invention refers to changing the device limit from one level (for example five devices for the first five days) to another level (seven devices for the next 25 days) ('960 patent at 4:27-31), which was only recited in some of the dependent claims (*see*, *e.g.*, *id.* at 12:12:42-51 (claim 9)).

Further, as set forth in Defendants' Motion To Dismiss, the '960 claims recite only simple rules, calculations, and comparisons to allow customers to use multiple copies of a licensed product. Dkt. No. 20 at 13. Defendants cited numerous cases holding that routine activities, such as receiving a request, looking up the rules for granting or denying the request, and then acting accordingly to grant or deny the request, are abstract under section 101. *Id.* at 11-12. Despite this body of case law, Uniloc proceeded with filing and continuing this suit. Uniloc must have recognized that the '960 patent was susceptible to a motion to dismiss under *Alice* because it spent over two pages *in its own complaints* outlining its failed defense before Defendants ever raised the issue. *See*, *e.g.*, Dkt. No. 7 at 4-7. This alone demonstrates Uniloc's knowledge that there was a section 101 issue, as the Court ultimately found.

Like the patentee in *eDekka*, Uniloc tried to defend the claims of the '960 patent by proffering the untenable argument that the claimed invention allegedly "improve[d] the functioning of the computer itself." Dkt. No. 26 at 18. Uniloc made this argument despite the fact that, although the claims recite a computer, they do nothing to improve or impact the underlying function of the computer technology, a point specifically made by the Court in its Order granting Defendants' Motion to Dismiss. Dkt. No. 113 at 8 ("Further, the claims of the '960 Patent are not directed to specific improvements in the functioning of a computer.").

Uniloc's arguments directed to the second prong of *Alice* were also unreasonable. As the Court noted:

> [T]he claims of the '960 Patent instruct the person of ordinary skill to implement the time-adjustable license using a computer. "Stating an abstract idea while adding the words 'apply it with a computer'" is "not enough for patent eligibility."

Dkt. No. 113 at 20 (citing *Alice*, 134 S. Ct. at 2358).

Uniloc further argued that setting a limit and a time period "in response to the [] device identity not being on the record" is "[a]n inventive ordered combination." Dkt. No. 26 at 20. Uniloc characterized these limitations as "alternative responses depending upon whether or not the 'device identity generated by sampling physical parameters of the given device' is 'already … on a record.'" *Id*. But, applying *Alice*, several courts have consistently held that choosing between two alternatives based on existing conditions is an abstract idea without any inventive concept. *See, e.g.*, *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1346 (Fed. Cir. 2013) ("generating a task in response to events" is not inventive); *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 2016 WL 5335501, at *8 (Fed. Cir. Sept. 23, 2016) (dependent claims that constitute particular choices from within range of existing content or hardware do not provide inventive concept).

Moreover, the Court found that Uniloc could not show any "ordered configuration" of these undisputedly known elements that could provide an inventive concept:

> The entirety of the method as a combination of steps does not contain an inventive concept. The method can be summarized as: receiving an access request for a licensed digital product, verifying the license, checking to see if the device is authorized and then either granting access if the device is already authorized or, if not, granting access after ensuring that the number of presently authorized devices is less than the number that is permitted to be authorized. *This amounts to no more than instructions to implement the time-adjustable license on a computer and cannot rescue the patent eligibility of claims 1, 22 or 25*. In sum, the independent claims of the '960 Patent are drawn to patent-ineligible subject matter.[5]

Dkt. No. 113 at 14-15 (emphasis added).

Uniloc's final argument to try to save its claims under the second prong of *Alice* was not only objectively unreasonable, it was disingenuous. Uniloc argued that claim limitations of a

---

[5] Likewise, "the dependent claims of the '960 Patent do not contain inventive concepts." Dkt. No. 113 at 17.

"digital product" and "a device identity generated by sampling parameters of the given device" contribute to an inventive concept—even while conceding that these limitations were well-known in the art. Dkt. No. 113 at 12-13. In fact, Uniloc's own patent incorporates by reference another patent, filed fifteen years earlier, that discloses those claim limitations. *See* '960 patent at 4:45-50.

In *Inventor Holdings*, the court found the case exceptional and granted fees under section 285 even though the Supreme Court's *Alice* decision issued two months *after* plaintiffs filed the suit. *Inventor Holdings*, 2016 WL 3090633, at *1, *3 ("The case at hand is an exceptional case because following the *Alice* decision, IH's claims were objectively without merit."). Here, Uniloc had two years' worth of case law to assess the validity of its claims under *Alice*. Uniloc nevertheless chose to assert an objectively abstract patent, and it continued to pursue its claims even after Defendants set forth why the claims are invalid in their motion to dismiss. In first bringing and then refusing to drop its baseless claims, Uniloc forced Defendants to incur significant expense in defending cases that should never have been filed.

### B. Uniloc's Litigation Conduct Also Caused Defendants to Incur Additional Unnecessary Expense in Defending Against Uniloc's Claims.

Knowing that the '960 patent was invalid under *Alice*, Uniloc not only pressed forward with the case, but deliberately ran up Defendants' litigation expenses.

For example, Patent Rule 4-1(a) requires each party to identify the claims terms "that party contends *should be construed by the Court* …." P.R. 4-1(a) (emphasis added). In its Patent Rule 4-1(a) disclosures, Uniloc identified 26 claim terms to Defendants that Uniloc contended should be construed by the Court. *See* Ex. B. This forced each Defendant to assess all 26 of those claim terms and try to coordinate with the other Defendants on a joint position in regard to each of those claim terms. But when the parties later exchanged their Patent Rule 4-2 disclosures of proposed

constructions and identification of extrinsic evidence, Uniloc proposed constructions for only three of the 26 terms that it had previously identified. *See* Ex. C. For each of the remaining 23 terms that Uniloc identified as requiring construction, Uniloc simply said "no construction necessary." Through this deliberate misconduct, Uniloc wasted Defendants' time and money addressing those additional claim terms.

Uniloc also refused to allow Defendants to share with outside counsel for the other Defendants the infringement contentions that Uniloc served on each individual Defendant. In doing so, Uniloc obstructed Defendants' ability to coordinate in identifying terms to be construed and in proposing claim construction positions. More importantly, Uniloc's strategy concealed inconsistent positions Uniloc may have been taking as to different Defendants. Uniloc maintained this refusal to allow Defendants to share the infringement contentions amongst outside counsel even after this Court ordered Uniloc to allow such sharing in another pending case. *See Uniloc USA, Inc. v. Med. Info. Tech., Inc.*, No. 6:16-cv-463-RWS, Dkt. No. 133 at 3 (E.D. Tex. Jan. 26, 2017).

Uniloc's misconduct during the litigation simply adds to the exceptional nature of these cases and further justifies an attorney fee award.

## V. CONCLUSION

As former Federal Circuit Chief Judge Randall Rader observed, "Judges know the routine all too well, and the law gives them the authority to stop it. We urge them to do so."[6] Defendants repeatedly pointed out the weaknesses in Uniloc's case, but Uniloc refused to cease its meritless litigation campaign. Thus, these cases stand out as exceptional because Uniloc forced the Court

---

[6] Randall R. Radar et al., *Make Patent Trolls Pay in Court*, THE NEW YORK TIMES (Jun. 5, 2014).

and Defendants to squander resources on a patent that was clearly invalid under section 101. Accordingly, Defendants request an award of attorneys' fees, the amounts of which will be provided by Defendants upon the Court's finding that the cases are exceptional or when ordered to submit them by the Court.

Respectfully submitted,

/s/ *Jennifer Haltom Doan*
Jennifer Haltom Doan
Texas Bar No. 08809050
J. Randy Roeser
Texas Bar No. 24089377
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75505
Telephone: 903-255-1000
Facsimile: 903-255-0800
jdoan@haltomdoan.com
rroeser@haltomdoan.com

Daniel T. Shvodian
Sarah Stahnke
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: 650-838-4413
dshvodian@perkinscoie.com
sstahnke@perkinscoie.com

**ATTORNEYS FOR AMAZON.COM, INC., AMAZON DIGITAL SERVICES, INC., HULU, LLC, and NETFLIX, INC.**

                                                  */s/ Justin Kurt Truelove (with permission)*
                                                  Alan E. Littmann
                                                  Illinois Bar No. 6283389
                                                  Doug Winnard
                                                  Illinois Bar No. 6311458
                                                  GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM LLP
                                                  564 W. Randolph St., Ste 400
                                                  Chicago, IL 60661
                                                  Tel: (312) 681-6000
                                                  Fax: (312) 881-5191
                                                  alittmann@goldmanismail.com
                                                  dwinnard@goldmanismail.com

                                                  Justin Kurt Truelove
                                                  TRUELOVE LAW FIRM
                                                  207 N. Wellington Street
                                                  P.O. Box 1409
                                                  Marshall, TX 75671
                                                  Telephone: 903-938-8321
                                                  Facsimile: 903-215-8510
                                                  kurt@truelovelawfirm.com

                                                  **ATTORNEYS FOR HOME BOX OFFICE, INC.**

## CERTIFICATE OF SERVICE

     The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this May 5, 2017.

                                                  */s/ Jennifer H. Doan*
                                                  Jennifer H. Doan

# CERTIFICATE OF CONFERENCE

      The undersigned certifies that counsel for Defendants complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on April 26, 2017 via telephone conference and between Jennifer Doan, acting for all defendants, and James Etheridge, counsel for Uniloc. No agreement was reached. On April 28, 2017, Jennifer Doan emailed James Etheridge confirming the presumption that no agreement had been reached. Discussions ended in an impasse due to lack of response by Uniloc's counsel, leaving an open issue for the court to resolve. Thereafter, on May 5, 2017, plaintiff's counsel, James Etheridge, confirmed that plaintiff as opposed to this motion and Defendants' request for fees. As such, this motion is opposed.

                                          */s/ Jennifer H. Doan*
                                          Jennifer H. Doan